UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VAN STONE,

                 Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

No. 17-cv-569 (RJS) (KNF)
ORDER ADOPTING REPORT AND RECOMMENDATION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/18

RICHARD J. SULLIVAN, District Judge:

    Plaintiff Van Stone, proceeding *pro se*, brings this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Social Security Commissioner (the "Commissioner") denying his application for Disability Insurance Benefits. (Doc. No. 2.) Now before the Court is the Report and Recommendation of the Honorable Kevin N. Fox, Magistrate Judge, recommending that the Court grant the Commissioner's motion for judgment on the pleadings. (Doc. No. 16 (the "Report").) For the reasons set forth below, the Court adopts the Report in its entirety.

I. BACKGROUND

    Stone stopped working as a flight attendant on June 22, 2010 and filed an application for Disability Insurance Benefits ("DIB") on June 26, 2013, alleging that he was disabled as of August 9, 2010 due to post-traumatic stress disorder, major depressive disorder, chronic fatigue, and Asperger-like symptoms. (Electronic Certified Administrative Record ("e-CAR") at 34; Report at 1–2.) He filed an application for Supplemental Security Income ("SSI") on June 29, 2013. (Report at 2.) After the Social Security Administration (the "SSA") initially denied both applications, Stone requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On January 9, 2015, ALJ Marissa Ann Pizzuto conducted a hearing at which Stone, proceeding *pro se*, amended his alleged

disability onset date to June 23, 2010. (*Id.*; e-CAR at 34.) On May 12, 2015, the ALJ issued a partially favorable decision, concluding that Stone was disabled as of June 29, 2013 and therefore eligible for SSI, but that he was not entitled to DIB because he had not shown that he was disabled between June 23, 2010, his alleged onset date, and September 30, 2011, the date he was last insured.[1] (e-CAR at 9–20.) The SSA's Appeals Council denied Stone's request for review on November 28, 2016, thereby rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1.)

Stone appealed the Commissioner's decision by filing a civil action in this Court on January 25, 2017. (Doc. No. 2.) On January 30, 2017, the Court both referred the case to Judge Fox for a Report and Recommendation and issued a service and scheduling order that instructed the Commissioner to (1) file and serve on Stone the Electronic Certified Administrative Record ("e-CAR") within 90 days, and (2) move for judgment on the pleadings within 60 days of the date on which the e-CAR was filed. (Doc. Nos. 6, 7.) The scheduling order then gave Stone another 60 days to respond to the Commissioner's motion. (Doc. No. 6.) The Commissioner filed the e-CAR on May 1, 2017 (Doc. No. 10) and filed and served a motion for judgment on the pleadings on June 30, 2017 (Doc. Nos. 14, 15). Stone never filed a response to the motion. On February 12, 2018, Judge Fox issued his Report, concluding that the ALJ's decision was supported by substantial evidence and unaffected by any error of law. Specifically, Judge Fox found that, based on the available medical evidence, the ALJ correctly determined that Stone had only mild restrictions on his ability to work prior to September 30, 2011. (Report at 9–10.) Accordingly, Judge Fox recommended that the Court grant the Commissioner's motion. (*Id.* at 10.) Judge Fox further noted that any objections to the Report must be filed by February 26, 2018. (*Id.* at 10–11.)

Notwithstanding his failure to respond to the Commissioner's motion, on February 26, 2018,

---

[1] Stone's SSI claim is not at issue here because he was found to be disabled as of June 29, 2013, the date he filed his SSI application. (e-CAR at 18-20.)

2

Stone filed objections to the Report; he also requested a one-month extension in which to look for an attorney and file amended objections with counsel's assistance. (Doc. Nos. 17, 18.) The Court declined to extend the deadline a full month, but permitted Stone to file amended objections by March 8, 2018. (Doc. No. 20.) Stone, still proceeding *pro se*, filed his amended objections on that date (Doc. No. 21 (the "Objections" or "Obj.")), and the Commissioner filed a response to the Objections on March 15, 2018 (Doc. No. 23).

## II. LEGAL STANDARDS

### A. Social Security Benefits Claims

The Social Security Administration runs two distinct programs for disability benefits. The Disability Insurance Benefits program, which is governed by Title II of the Social Security Act, functions like an insurance program; the amount that the individual has paid into the program determines the amount of benefit available, and the claimant is eligible only if he proves that he became disabled while he was insured. *See* 42 U.S.C. § 423 *et seq.*; 20 C.F.R § 404.315. The Supplemental Security Income program, which is governed by Title XVI of the Act, functions more like a welfare program; individuals may collect benefits regardless of whether they have worked or contributed to Social Security, and the claimant may begin collecting benefits the month after filing his application. *See* 42 U.S.C. § 1381 *et seq.*; 20 C.F.R. § 416.330.

Under the Act, a claimant is deemed "disabled" for the purposes of either program if he demonstrates an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also Hankerson v. Harris*, 636 F. 2d 893, 895 n.2 (2d Cir. 1980) (noting that the definition of disability is "virtually identical" in DIB and SSI cases). To establish eligibility for DIB, however, a claimant must demonstrate that his condition reached disabling severity while he was still

insured – that is, on or before the expiration of his date last insured. *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.321(a); *Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Human Servs.*, 360 F. App'x 240, 242 (2d Cir. 2010) (citing *Arnone v. Bowen*, 882 F.2d 34, 37 (2d Cir. 1989)).

In evaluating whether a claimant is disabled, an ALJ must apply a five-step sequential analysis, 20 C.F.R. § 404.1520(a)(4), which the Second Circuit has summarized as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citation omitted). The claimant bears the burden of proof at the first four steps, and the Commissioner bears the burden at the final step. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012). The ALJ must weigh all medical evidence and other "relevant evidence" he receives, 20 C.F.R. §§ 404.1520b(b), 416.927(b), but need not resolve all inconsistences, as long as he makes findings supported by substantial evidence. *See Laine v. Comm'r of Soc. Sec.*, No. 07-cv-1251 (RO), 2013 WL 2896968, at *4 (S.D.N.Y. June 13, 2013) ("The ALJ is not required by the regulations to reconcile conflicting medical testimony, but is required to fully assess the record and provide findings that are supported by substantial evidence in the record."). Here, Stone was awarded SSI, and he does not dispute that his date last insured for purposes of DIB was September 30, 2011 (*see* Obj. at 1; e-CAR at 11, 53), so the only issue is whether substantial evidence supports the ALJ's finding that Stone was not disabled on or before that date.

B. Judicial Review

A district court may not disturb an ALJ's decision if it is based on correct legal principles and supported by substantial evidence. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla" of evidence; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). The substantial evidence standard "applies not only to basic evidentiary fact-finding but extends to inferences and conclusions drawn from such facts." *Gracia v. Apfel*, No. 97-cv-4035 (SAS), 1998 WL 599714, at *4 (S.D.N.Y. Sept. 10, 1998). Thus, the Commissioner's "findings of fact, as well as the inferences and conclusions drawn from those findings, are conclusive even in cases where a reviewing court's independent analysis of the evidence may differ from the Commissioner's analysis." *Id.* (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). Furthermore, the existence of contrary evidence does not suffice to find in favor of the claimant if substantial evidence otherwise supports the ALJ's findings. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The Court may reject a finding "only if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (2d Cir. 2012) (emphasis in original).

C. Review of the Report and Recommendation

The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). If a party "properly objects" to – that is, raises objections that are "clearly aimed at particular findings in" – the magistrate judge's report, the district court reviews those findings *de novo*. *See Rodriguez v. Colvin*, No. 12-cv-3931 (RJS) (RLE), 2014 WL 5038410, at *3 (S.D.N.Y. Sept. 29, 2014) (citation and internal quotation marks omitted); *see also McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009). Conversely, if the objections are improper – because they are

5

"conclusory," "general," or "simply rehash or reiterate the original briefs to the magistrate judge," *Rodriguez*, 2014 WL 5038410, at *3 (internal quotation marks omitted) – the district court will review the magistrate's findings only for clear error, *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "Where, as here, the objecting party is proceeding *pro se*, the Court construes the objections liberally." *Wearing v. Lavalley*, No. 10-cv-8307 (JPO), 2015 WL 6738327, at *1 (S.D.N.Y. Nov. 4, 2015).

III. DISCUSSION

Stone raises several objections, which principally appear to target Judge Fox's conclusion that the ALJ properly determined, at step two of the sequential analysis for disability determinations, that Stone did not suffer from a "severe" impairment or combination of impairments during the relevant time period for Disability Insurance Benefits. (Obj. at 1–2; *see also* Report at 9–10; e-CAR at 11–12.) The Court will address each objection in turn.

Stone first asserts that he was unaware of the September 30, 2011 expiration date for his DIB, and that if he had known about it, he would have applied for DIB earlier. (Obj. at 1.) Even if true, this objection does not identify any error in the Report or in the decision of the ALJ. In any event, the ALJ's decision to deny Stone DIB turned not on the timing of Stone's application, but on the ALJ's finding, after a hearing and upon a thorough review of the available evidence, that Stone was not "disabled" within the meaning of the Social Security Act on or before September 30, 2011, his date last insured. (e-CAR at 11–12.)

Second, Stone cites the ALJ's finding that he "meets the insured status requirements of the [Social Security Act] through September 30, 2011," and asserts that this finding "qualifies [him] for [DIB]." (Obj. at 1.) Stone appears to misunderstand the insured-status requirements, which address whether a claimant has enough work credit to be eligible for DIB. *See* 20 C.F.R. §§ 404.130–132; *Arnone*, 882 F.2d at 37. Insured status is a necessary, but not sufficient, condition for receipt of DIB;

to qualify for DIB, a claimant must also demonstrate that he was "disabled" on or before his date last insured. *See* 20 C.F.R. § 404.315; *Arnone*, 882 F.2d at 37 (citing 42 U.S.C. §§ 423(a)(1)(A)); *Gonzalez*, 360 F. App'x at 242. Hence, the ALJ's finding that Stone met the insured-status requirements through September 30, 2011 was not a determination that Stone was entitled to benefits during that time.

Next, Stone asserts that since June 23, 2010 – the day after he stopped working as a flight attendant – he "could not look for or interview for a job[.]" (Obj. at 1–2.) But this assertion is belied by the record. Specifically, contemporaneous notes from Stone's treatment provider at the time, Nurse Practitioner Ella Ares, indicate that Stone was suspended from his job for allegedly pushing a co-worker, that Stone challenged the suspension, and that he thereafter continued trying to get his old job back during the relevant period. (e-CAR at 242–245.) As the Commissioner argues, this "demonstrates that [Stone] could, and indeed did, look for work during that time – albeit unsuccessfully." (Doc. No. 23 at 6.) Thus, the ALJ properly found that Stone intended to return to work during this period (*see* e-CAR at 13–14), and the Report did not err in relying in part on that finding to conclude that substantial evidence supported the ALJ's disability determination (*see* Report at 10).

Fourth, Stone appears to argue that he could not produce medical evidence of severe depression because, he says, he did not know how severe his condition was, and lacked the funds to seek specialized psychiatric treatment. (Obj. at 2.) Again, this argument finds little support in the record, which shows that Stone saw Nurse Practitioner Ares four times during the relevant period, reported feeling better after she switched his medication, and was trying to get re-hired at his old job. (e-CAR at 242–245; Report at 10.) Indeed, a progress note from May 25, 2011, a few months before Stone's date last insured, indicates that Stone reported "doing well" and "feel[ing] good." (e-CAR at 242.) And the medical record reveals no episodes of decompensation or instances of hospitalization for a mental disorder between Stone's alleged onset date and his date last insured. (Report at 10.)

Thus, there is little reason to believe that a specialized psychiatric examination would have found that Stone was suffering from severe depression during the relevant period. Stone's suggestion to the contrary is pure speculation.

Fifth, Stone takes issue with the Report's conclusion that "the medical evidence demonstrates that Stone [did] not have a severe mental impairment . . . during the relevant period" because, he asserts, "[m]edical evidence, in many cases, cannot definitively address non-physical issues," such as his depression. (Obj. at 2; *see also* Report at 9–10.) Stone contends that the non-medical evidence in his case – "principally [his] work record of chronic employment dismissal(s)" – is "compelling." (Obj. at 2.) As an initial matter, the ALJ was not required to "definitively" assess Stone's mental condition; the relevant question is whether her finding that Stone was able to work prior to September 30, 2011 was supported by "substantial evidence," and Stone does not really dispute that it was. *See* 42 U.S.C. § 405(g); *Brault*, 683 F.3d at 448 (2d Cir. 2012) (noting that under the substantial evidence standard, a court can overturn the ALJ's findings "only if a reasonable factfinder would *have to conclude otherwise*" (internal quotation marks omitted)); *DeChirico*, 134 F.3d at 1182–83 (affirming Commissioner's decision where there was substantial evidence for both sides).

In any event, the record does not reflect that Stone has a history of "chronic employment dismissals." (Obj. at 2; *see also* e-CAR at 154.) In fact, the record indicates that Stone obtained a college degree in 1991 and was employed almost continuously, albeit in several different jobs, through August 2010, when he was fired after a two-year stint as a flight attendant. (e-CAR at 154.) And even if Stone could show that he has generally had trouble holding down a job, that would hardly be "compelling" evidence of a severe mental impairment, especially since Stone has not shown that any difficulty he may have had was caused by his depression. Indeed, Stone appears to attribute his alleged employment difficulties primarily to his failure to "play politics" (Obj. at 1), and the record indicates that he was suspended from his last job due to an accusation of workplace violence (e-CAR

8

at 245). Thus, this objection is meritless.

Next, Stone objects to the Report's reliance on the ALJ's finding that Stone "experienced no episodes of decompensation of extended duration . . . during the period from his alleged onset date to the date he was last insured," apparently on the ground that the term "episodes of decompensation" is "no longer used in Social Security's mental disability listings." (Obj. at 2.) Stone seems to be referring to amendments that took effect on January 17, 2017 – nearly two years after the ALJ decided his case. *Compare* 20 C.F.R. § 404.1520a (effective June 13, 2011) *with* 20 C.F.R. § 404.1520a (effective January 17, 2017). The regulations that apply here, however, are the ones that were in effect at the time of the ALJ's decision, which did include "episodes of decompensation" as a factor. *See Rousey v. Comm'r of Soc. Sec.*, _ F. Supp. 3d _, 2018 WL 377364, at *8 n.8 (S.D.N.Y. Jan. 11, 2018).

Finally, Stone says that he "would like to present, *in person*, evidence and witness(es) regarding [his] [social security] appeal," which "has not been done yet." (Obj. at 2.) Stone does not specify what evidence or witnesses he has in mind, but mentions that "his most important" witness would be his pastor, Mr. Reyn Cabinte. (Obj. at 2.) However, because "the district court acts as an appellate court and not a trier of fact in social security cases, it may not consider evidence outside of the administrative record in reviewing a claim for benefits." *Bethea v. Astrue*, No. 3:10-cv-744 (JCH), 2011 WL 977062, at *10 (D. Conn. Mar. 17, 2011); *see also Carnevale v. Gardner*, 393 F.2d 889, 891 & n.1 (2d Cir. 1968); 42 U.S.C. § 405(g) ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis added). Moreover, insofar as Stone's statements can be construed as a request to remand this case to the Social Security Administration for consideration of additional evidence, the Court may do so only if (1) the claimant identifies new evidence – *i.e.*, evidence that was not before the ALJ

or Appeals Council; (2) that evidence is "material" – *i.e.*, relevant, probative, and reasonably capable of producing a different outcome; and (3) the claimant has shown good cause for failing to introduce the evidence earlier. *Bethea*, 2011 WL 977062, at *10; *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). Here, assuming that the evidence Stone wishes to introduce has not already been presented, there is no indication that the evidence is material or that he had good cause for not introducing it earlier. Accordingly, the Court declines to remand this case to the Administration for consideration of largely undescribed new evidence.

## IV. CONCLUSION

For the foregoing reasons, the Court adopts the Report in all material respects and finds that the ALJ's decision denying Stone's claim for disability insurance applied the correct legal standards and was supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 14, enter judgment in favor of the Commissioner, and close this case.

SO ORDERED.

Dated: March 27, 2018
        New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE